IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TIMOTHY SHELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:19-cv-00080 |
| ) | |
| LAURA PYLE and McCASKEY & PYLE, ) | By: Elizabeth K. Dillon |
| ATTORNEYS-AT-LAW, PLLC, ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Pro se plaintiff Timothy Shelley brings claims of tortious interference with parental rights, negligence, and intentional infliction of emotional distress against defendants Laura Pyle and McCaskey & Pyle, Attorneys-at-Law, PLLC. This case arises out of a child custody dispute between Shelley and Kimberly Montgomery, in which Pyle was appointed guardian ad litem. Shelley claims that McCaskey & Pyle is vicariously liable for the claims against Pyle under a theory of respondent superior.

Pending before the court is defendants' motion for summary judgment. There are no genuine disputes of material fact, and the motion is ripe for resolution. For the reasons set forth below, the court will grant defendants' motion for summary judgment.

**I. BACKGROUND**

**A. December 2017 Custody and Visitation Order**

Shelley and Kimberly Montgomery ("Montgomery") share a child ("the child"). (Compl. 5, Dkt. No. 1.) In 2017, Shelley and Montgomery had a disagreement over child custody and visitation that resulted in proceedings before the Lexington and Rockbridge Juvenile and Domestic Relations Court ("juvenile court"). (*Id.*) The juvenile court appointed Pyle as

1

guardian ad litem for the child. (*Id.*) On December 19, 2017, the juvenile court issued an order granting Montgomery full legal and physical custody of the child and granting Shelley visitation rights, including three two-week visitation periods each summer. (Defs.' Ex 1 at 4, Dkt. No. 19-1.)

The order stated that Pyle would remain guardian ad litem for ninety days following the order. (*Id.* at 5.) Defendants believe that Pyle's guardian ad litem appointment expired on March 19, 2018, pursuant to the juvenile court order. (Compl. 4–6; Defs' Mot. for Summ J. 2, Dkt. No. 19.) Plaintiff believes that Pyle's guardian ad litem appointment expired on December 19, 2017, because the juvenile court order extending guardianship beyond the conclusion of the case was ineffective. (Plf.'s Response 3, Dkt. No. 23.)

## B. June 2018 Visitation Dispute

On June 14, 2018, Montgomery emailed Pyle expressing concern over the child's upcoming two-week visit with Shelley. (Defs.' Ex. 1 at 8.) Montgomery explained that during the child's last visit with her father, Shelley had shown the child his blog. (Id. at 8-13.) The blog is dedicated to various conspiracy theories that Shelley believes to be a reality, including "[the child] being raped by the CIA." (*Id.* at 8.) Montgomery told Pyle that during the child's last visit with father, "[the child] locked herself in the bathroom at his house and begged [Montgomery] to come get her." (*Id.*) Montgomery requested Pyle's help, stating "[a]ny thoughts you have or solutions that can help us would be appreciated . . . [Shelley's] mental illness[1] is affecting [the child] and I feel helpless." (*Id.*)

The next day, June 15, 2018, Montgomery emailed Shelley, "writing to cancel [the child]

---

[1] Shelley was hospitalized for over a week at Brooke Glen Behavioral Hospital in September 2016 under an involuntary commitment order. (Defs.' Ex. 1 at 15.) At that time, he was diagnosed with a substance-induced psychosis. (*Id.*)

2

coming to PA . . . under the advice of [her] attorney and the GAL [Pyle]." (Compl. 6; Defs.' Ex. 1 at 43.) Shelley replied, stating that Pyle's guardian ad litem appointment had expired and that Montgomery was in violation of the juvenile court's visitation order. (*Id.* at 43.)

On June 20, 2018, Shelley filed a pro se motion to show cause for Montgomery's violation of the visitation order and motions for sanctions against Montgomery, Montgomery's attorney Hancock, and guardian ad litem Pyle. (Defs.' Ex. 1 at 44–55.) On June 25, 2018, Montgomery, represented by William Hancock, filed a motion to end Shelley's visitation periods. (Defs.' Mot. for Summ. J. 4; Defs.' Ex. 1 at 66.)

**C. October 2018 Custody and Visitation Hearing**

On October 2, 2018, the juvenile court held a hearing to resolve the pending motions. The court dismissed the motions for sanctions against Hancock and Pyle. (Defs.' Ex. 1 at 81–82, 90, 93.) The court then heard testimony from multiple witnesses. The child testified that she loves her father, but she is also afraid of him because "[he] ha[s]n't been well" and the content of his blog makes her uncomfortable. (Defs.' Ex. 3 at 6–11, Dkt. No. 19-3.) The court reviewed posts from Shelley's blog, which state that government actors have used mind control technology on him and perpetrated sexual assaults against him, his family, and others. (*Id.* at 71.) The court also heard testimony from Shelley that he believes the information in his blog posts to be true. (Defs.' Ex. 2 at 47–52, Dkt. No. 19-2.) The court allowed Shelley to question Pyle,[2] who stated that she "advised [the child] not to go up to see her father if she felt unsafe." (Defs.' Ex. 3 at 68.) Pyle explained that she offered such guidance, even though her guardian ad litem appointment had expired, because she "was concerned for the safety of [the] child." (*Id.*)

---

[2] Pyle was not called as a witness at this hearing and did not testify under oath. However, the court allowed Shelley to ask Pyle questions at the hearing, in part because the court planned to reappoint Pyle as guardian ad litem. (Defs.' Ex. 3 at 65–66.)

3

The juvenile court concluded that Shelley's blog posts constituted a material change in circumstance since the December 2017 visitation order. (*Id.* at 71.) The court ordered that Shelley have a follow-up parental capacity evaluation and temporarily suspended his visitation periods with the child. (*Id.*) The court also re-appointed Pyle as guardian ad litem and provided that the child may visit Shelley at her discretion, but Shelley may not initiate contact with the child. (*Id.* at 72.)

### D.  January 2019 Custody and Visitation Order

On January 17, 2019, on the juvenile court held a hearing to revisit the temporary suspension of Shelley's visitation periods and review his updated parental capacity evaluation. (Defs.' Ex. 4 at 81–82, Dkt. No. 19-4.) After considering the updated evaluation and the child's prior testimony, the court ordered full legal and physical custody to Montgomery with no custodial or visitation periods for Shelley. (*Id.*)

Shelley appealed the January 2019 juvenile court order. On February 27, 2020, the Circuit Court of Rockbridge County considered the appeal and upheld the juvenile court's order. (Defs.' Ex. 4 at 84–85.) The circuit court granted sole legal and physical custody to Montgomery and no custody or visitation to Shelley, with the exception that the child "may initiate any contact with [] Shelley as she sees fit." (*Id.*)

### E.  Claims Against the Guardian Ad Litem

Shelley now claims that Pyle tortiously interfered with his parental rights when she responded to Montgomery's June 2018 email and advised the child not to visit her father if she felt unsafe. (Compl. 6.) Shelley also claims that Pyle's advice to the child amounts to negligence and intentional infliction of emotional distress. (*Id.* at 7–8.) He argues that McCaskey & Pyle, the law firm where Pyle works, is vicariously liable for Pyle's torts. (*Id.* at 8.)

4

## II.  DISCUSSION

### A.  Standard of Review

"Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials before the court indicates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."  *Pence v. Tenneco Auto. Operating Co.*, No. 5:04CV00075, 2005 WL 999972, at *2 n.2 (W.D. Va. Apr. 26, 2005), aff'd, 169 F. App'x 808 (4th Cir. 2006) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "The burden is on the movant to establish that no material factual disputes exist."  *Id.*  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

There is no genuine dispute of material fact in this case.  Shelley accepts as accurate defendants' statement of facts presented in the motion for summary judgment.  (Plf.'s Resp. at 2.)  The only fact Shelley disputes is the date on which Pyle's guardian ad litem appointment expired.  (*Id.* at 3.)  However, whether Pyle's appointment expired in December 2017 as Shelley asserts or in March 2018 as Pyle asserts is immaterial because the events at issue took place well after those dates.  There is no dispute that Pyle's appointment had expired by June 2018 when Montgomery emailed Pyle seeking advice about the child's visitation with Shelley.  Therefore, no material facts are in dispute.

### B.  Tortious Interference with Parental Rights

Virginia law recognizes tortious interference with parental rights as a cause of action. *Padula-Wilson v. Landry*, 841 S.E.2d 864, 869 (Va. 2020) (citing *Wyatt v. McDermott*, 725 S.E.2d 555 (Va. 2012)).  In order to state a claim for tortious interference of parental rights, a

plaintiff must plead sufficient facts to show that:

> (1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child; (2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights; (3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and (4) damages resulted from such interference. *Wyatt*, 725 S.E.2d at 562.

"These elements 'presuppose not merely any interference of any kind, but rather, a tortious interference . . . .'" *Padula-Wilson*, 841 S.E.2d at 869–70 (quoting *Coward v. Wellmont Health System*, 812 S.E.2d 766, 771 (Va. 2018)). Tortious interference refers to "[o]ne who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him . . . ." *Id.* (quoting Restatement (Second) of Torts § 700 (1997)).

In *Padula-Wilson*, the court denied a tortious interference claim brought by a mother involved in custody and visitation proceedings who alleged that "various professionals who participated in those proceedings, including the children's guardian ad litem . . . conspired, lied, and acted maliciously . . . to deprive [her] of the rightful custody of her children . . . ." 841 S.E.2d at 866. Specifically, the mother argued that the guardian ad litem interfered with her parental rights by "conspiring to prevent her from seeing her children, in violation of a court order which granted her supervised contact." *Id.* at 871. The court explained that even if there were a violation of a visitation order the appropriate remedy was not a collateral claim for tortious interference, but rather to "alert[] the court that its order was being violated and ask[] for that violation to be remedied." *Id.* The court expressly "decline[d] to expand the scope of the

6

tort of interference with parental rights by opening a new front for disappointed, angry, frustrated, or vindictive parents to renew battle." *Id.* The court explained that "dragging mental health professionals and guardians ad litem into court for their role in a custody and visitation case would be highly detrimental to the process." *Id.* "[N]o cause of action for tortious interference with a parental or custodial relationship may be maintained against a guardian ad litem . . . based upon his/her expert testimony and/or participation in a child custody and visitation proceeding." *Id.*

Here, *Padula-Wilson* applies even though Pyle was no longer the child's guardian ad litem at the time of the alleged tortious interference. The appropriate remedy for Montgomery's violation of the visitation order was for Shelley to alert the juvenile court of the violation. Shelley did alert the juvenile court of the violation, and the court held a hearing in which Shelley received full due process. Thus, there is no need for Shelley to relitigate this issue through a collateral tortious interference claim.

In addition, Pyle did not tortiously interfere with Shelley's parental rights. Pyle did not abduct the child, nor did she compel or induce the child not to visit her father. Rather, Pyle responded to an unsolicited email from Montgomery and advised the child not to visit her father *if she felt unsafe*. Such a statement does not rise the level of tortious interference.

Moreover, Shelley's claim against Pyle is exactly the type of tortious interference claim that *Padula-Wilson* rejected. Shelley has dragged Pyle into court for her role in the custody and visitation proceedings. Although Pyle provided the child with advice after her guardian appointment expired, she provided this advice based on her knowledge and participation in the prior custody proceedings. To allow litigation against a former guardian ad litem for responding to a concerned parent or providing advice in the best in interest of the child would frustrate the

7

custody and visitation process. Therefore, the court will grant summary judgment in favor of the defendants on the claim of tortious interference with parental rights.

## D. Negligence

Shelley claims that "Pyle had a duty not to advise others to violate court orders, to interfere with others' parental rights, or to destroy parents' relationships with their children." (Compl. 7.) However, Pyle did not owe Shelley a duty as guardian ad litem at the time of the alleged negligence because her guardian appointment had expired. Even if Pyle had a duty not to advise others to violate court orders, she did not breach this duty by telling the child she should not visit her father if she felt unsafe. Shelley's claim that Pyle negligently breached a duty not to interfere with his parental rights is essentially a restatement of his tortious interference claim. Therefore, the court will grant summary judgment in favor of the defendants on the negligence claim.

## E. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, the plaintiff "must prove, by clear and convincing evidence, that: (1) 'the wrongdoer's conduct is intentional or reckless,' (2) 'the conduct is outrageous and intolerable,' (3) 'the alleged wrongful conduct and emotional distress are causally connected,' and (4) 'the distress is severe.'" *Calloway v. Commonwealth of Virginia*, No. 5:16-CV-00081, 2017 WL 4171393, at *10 (W.D. Va. Sept. 20, 2017) (quoting *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013) (citing *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991))). Claims for intentional infliction of emotional distress are not favored under Virginia law. *Id.* (citing *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001) (quoting *Bowles v. May*, 166 S.E. 550, 555 (Va. 1932))). "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to

8

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 400 S.E.2d at 162 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Here, Pyle's conduct was far from outrageous or intolerable. Pyle responded to Montgomery's email that expressed concern over her daughter's safety. Pyle advised the child that she need not visit her father if she felt unsafe. This is not outrageous conduct, regardless of whether Pyle's appointment as guardian had expired. It is far from atrocious or intolerable for Pyle to act out of concern for the child's safety. On the contrary, one may expect a former guardian ad litem to respond to a parent's plea for assistance and to advise a child to act with concern for her own safety. Therefore, the court will grant summary judgment in favor of the defendants on the claim of intentional infliction of emotional distress.

### III.  CONCLUSION

There are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law on plaintiff's claims of tortious interference with parental rights, negligence, intentional infliction of emotional distress, and vicarious liability. Therefore, the court will enter an order granting defendants' motion for summary judgment.

Entered: November 2, 2020.

*/s/ Elizabeth K. Dillon*
  Elizabeth K. Dillon
  United States District Judge

9